Affirmed and Memorandum Opinion filed February 8, 2007








Affirmed and Memorandum Opinion filed February 8, 2007.

 

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01264-CV

____________

 

WAFIC TAWFIC ATAYA, SAWSSAN ATAYA
A/K/A SAWSSAN MOHAMAD ELEHIKH-ISSA, AND VICTORY WHOLESALE, INC., Appellants

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2003-20338

 



 

M E M O R A N D U M   O P I N I O N

In a single issue, appellants Wafic Tawfic Ataya, Sawssan
Ataya a/k/a Sawssan Mohamad Elehik-Issa, and Victory Wholesale, Inc. challenge
the trial court=s denial of their motion for new trial. 
We affirm.

I.  Factual and Procedural Background








This appeal concerns a post-answer default judgment and
subsequent denial of a motion for new trial.  In April 2003, the State of Texas
sued Wafic Tawfic Ataya, his wife, Sawssan Ataya, and their wholesale food
distribution business, Victory Wholesale (collectively Aappellants@), seeking civil
penalties and to enjoin them from operating the business without a license in
violation of the Texas Health and Safety Code.  Appellants timely answered. 
After numerous re-settings, the trial court set the case for trial for a
two-week docket beginning the latter half of September 2005.[1] 









The record reflects that, as early as July 22, 2005,
appellants= attorney, Jonathan E. Bruce, informed them in writing
of this trial setting. Mr. Ataya also concedes that Bruce informed him of this
setting on August 16, 2005 in discussions about a potential settlement with the
State.  Thereafter, in the three-week period before September 20, Bruce left
numerous messages on Mr. Ataya=s cell phone reminding him of the trial
setting and requesting a callback.  After hearing no response, on September 20,
Bruce mailed a letter to the Atayas= home address in
Houston, Texas imploring them to return his numerous phone messages and again
stating that trial was set for Athis week@ and that the
court could call the case at any time.  Still after hearing no response, on
September 30, Bruce mailed the Atayas a final correspondence stating that  (1)
the court had called their case for October 4,[2]
(2) he would move for a continuance, which the court would most likely deny,
and, (3) pursuant to a prior written agreement, he would move to withdraw as
appellants= counsel because they had paid him only for a
settlement agreement.  Finally, at 3:15 p.m. on October 3, Mr. Ataya called
Bruce.  From the conversation, which Bruce described as Akind of . . .
chopped-up,@ Bruce understood that Mr. Ataya was out of the
country.  According to Bruce, Mr. Ataya said he received the correspondence
regarding the October 4 trial date and the motion to withdraw and that he did
not object to the motion for withdrawal.  To ensure that Mr. Ataya understood
the situation, Bruce faxed a copy of the September 30 letter to a Alocal phone number
which apparently was faxed to him overseas[, and Mr. Ataya later] re-faxed it
to [Bruce=s] office.@

The following day, on October 4, 2005, appellants failed to
appear for trial.  Bruce, however, appeared, and, as promised, moved to
withdraw as appellants= counsel and requested a continuance.  The
court granted his motion to withdraw but denied the continuance in part because
it Aha[d continued
trial] so many times before@ and A[Mr. Ataya=s] absence has
caused us to continue to move this case.@  The court
subsequently entered a default judgment against appellants, permanently
enjoining them from operating without a license.  The court also assessed
$425,000 in penalties for seventeen violations of the Health and Safety Code,
$13,210.04 in investigation costs, $4,100 in destruction costs of adulterated
products discovered in the investigation, and $24,963.95 in attorney=s fees.  








Appellants thereafter filed a motion for new trial.  They
contended that their respective failures to appear were not intentional or the
result of conscious indifference but, rather, was due to a mistake.  In
support, appellants attached affidavits of both Mr. and Mrs. Ataya and copies
of Bruce=s September 20 and
30 letters.  In his affidavit, Mr. Ataya averred that he went to Sacramento,
California on September 3, 2005 to care for a sick relative and left his cell
phone and fax machine in the care of his wife.  He stated that his wife is of
foreign extraction, does not read or speak English fluently, and has difficulty
understanding many English phrases.  Therefore, because his wife Acould neither read
nor understand [Bruce=s] messages very well,@ A[n]one of these
communications were conveyed to [him] by [his] wife until October 3, 2005.@  He further
claimed that, by the time he spoke with Bruce the day before trial, he Adid not have
sufficient time, money or means of getting from Sacramento to Houston, by 9:00
a.m. the following morning.@  Though Mr. Ataya admitted he was Atold earlier in
the year that the case may go to trial around this time,@ he claimed he Athought [he] would
have some more time to arrange [his] appearance in court.@  In her
affidavit, Mrs. Ataya echoed her husband=s assertions that
she does not read or speak English fluently.[3] 
Further, though she acknowledged Bruce=s Apurported[]@ attempts to call
her husband=s cell phone and the September 30 letter and stated
that her Ahusband became aware of this letter on October 3,
2005,@ she maintained
that she Anever understood that there was a trial on October 4,
2005.@  Therefore, in
the motion, appellants relied on Mrs. Ataya=s alleged lack of
English proficiency to establish their respective Amistake[s]@ in failing to
appear.

Appellants also asserted in their motion for new trial that
(1) the Atayas are merely officers and agents of Victory Wholesale and thus not
personally responsible for its corporate civil liabilities and (2) Victory
Wholesale had filed for bankruptcy and thus was protected by the automatic stay
in the United States Bankruptcy Code.  They further contended that the granting
of a new trial would not injure the plaintiff.  

The State responded that appellants acted with conscious
indifference in failing to appear for trial, citing the repeated, unreturned
communications from Bruce.  To controvert Mrs. Ataya=s alleged lack of
English proficiency, the State=s attorney attached an affidavit averring
that she had previously deposed Mrs. Ataya in October 2003 entirely in English,
and Mrs. Ataya never requested an interpreter.  The State further challenged
the appellant=s defenses.  As to the Atayas, the State asserted that
because they had been sued in their individual capacities, the Atayas could not
defend on the basis they were merely officers and agents of Victory Wholesale. 
As to Victory Wholesale, the State contended the governmental unit exception to
the automatic bankruptcy stay applied, which allowed a suit against the
company.  Finally, the State maintained that a grant of new trial would cause
significant delay and prejudice. 








The court heard the motion, but no party presented live
testimony.  After considering Athe motion; the evidence; and the
applicable law,@ the court subsequently denied appellants= motion for new
trial, finding that ADefendants= claim of lack of
notice because Sawssan Ataya could not understand the messages not to be
credible in light of the competing evidence and this Court=s own experience
with this cause . . . [and] that Defendants have failed to establish a
meritorious defense to the action.@

The Atayas and Victory Wholesale now appeal, claiming the
trial court should have set aside the default judgment and granted a new trial
because appellants negated a lack of intent or conscious indifference in
failing to appear, presented a meritorious defense, and established a new trial
would cause no injury to the State.      

II.  Standard of Review

We review a trial court=s denial of a
motion for new trial under the abuse of discretion standard.  Puri v.
Mansukhani, 973 S.W.2d 701, 715 (Tex. App.CHouston [14th
Dist.] 1998, no pet.).  Generally, a trial court abuses its discretion when it
acts without reference to any guiding rules and principles or in an arbitrary
or unreasonable manner.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241B42 (Tex. 1985).  A trial court does not
abuse its discretion if it bases its decision on conflicting evidence and some
evidence supports its decision; however, an abuse of discretion occurs when the
trial court=s decision is contrary to the only permissible view of
the evidence.  See In re Barber, 982 S.W.2d 364, 366 (Tex. 1998); Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).  In the default judgment
context, a trial court abuses its discretion by failing to grant a new trial
when the movant meets all of the Craddock elements.  Bank One, Tex.,
N.A. v. Moody, 830 S.W.2d 81, 85 (Tex. 1992) (citing Craddock v.
Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939)).  Under
Craddock, a default judgment should be set aside and a new trial granted
if (1) the failure to answer was not intentional or the result of conscious
indifference but was due to a mistake or accident, (2) the defendant sets up a
meritorious defense, and (3) the motion is filed at such time that granting a
new trial would not result in delay or otherwise injure the plaintiff.  In
re R.R., 209 S.W.3d 112, 114B15 (Tex. 2006).  








III.  Analysis

Appellants contest the trial court=s findings
regarding the first Craddock element on two grounds.  First, as a
threshold matter, they contend the trial court=s credibility
determination regarding Mrs. Ataya=s ability to
understand her attorney=s messages constitutes an abuse of
discretion Ain its own right@ because the court
never had an opportunity to judge her credibility.  Second, they generally
contend the trial court committed a substantive abuse of discretion by
implicitly concluding, based on the above finding, that they failed to negate
an intentional or consciously indifferent failure to appear.  We disagree with
both contentions.

The burden of proof lies with the movant to show that the
failure to appear at trial was not negligent, intentional, or the result of
conscious indifference. Holberg v. Short, 731 S.W.2d 584, 586 (Tex. App.CHouston [14th
Dist.] 1987, no writ).  Conscious indifference means failing to take some
action which would seem indicated to a person of reasonable sensibilities under
similar circumstances.  State v. Sledge, 982 S.W.2d 911, 914 (Tex. App.CHouston [14th
Dist.] 1998, no pet.).  In other words, Ait must be shown
that the appellant was clearly aware of the situation and acted contrary to
what such awareness dictated.@  Id.; see also Fidelity &
Guar. Ins. Co. v. Drewery Constr. Co., 186 S.W.3d 571, 575B76 (Tex. 2006)
(defining the conscious indifference standard as Athe defendant knew
it was sued but did not care@).  A failure to appear is not intentional
or due to conscious indifference merely because it was deliberate; rather, it
must also be without justification.  In re K.A.R., 171 S.W.3d 705, 717
(Tex. App.CHouston [14th Dist.] 2005, no pet.).  Proof of such
justificationCaccident, mistake, or other reasonable explanationCnegates intent or
conscious indifference.  Id.  When the non-movant controverts the movant=s allegations, the
trial court must look to the knowledge and acts of the movant to determine
whether his conduct was the result of conscious indifference or intentional
disregard.  Holberg, 731 S.W.2d at 586B87 (citing Strackbein
v. Prewitt, 671 S.W.2d 37, 39 (Tex. 1984)).  Courts have applied this
element liberally, and each case depends on its own facts.  Gotcher v.
Barnett, 757 S.W.2d 398, 401 (Tex. App.CHouston [14th
Dist.] 1988, no writ).








Appellants= threshold contention seems to suggest the
trial court abused its discretion by making a credibility finding as to Mrs.
Ataya without the benefit of any live, sworn testimony.   In support, they cite
Estate of Pollack v. McMurrey, 858 S.W.2d 388, 392 (Tex. 1993), for the proposition that the Atrial court
generally may not resolve disputed fact issues regarding intent or conscious
indifference on affidavits alone.@  We find Pollack
distinguishable.  There, the trial court denied a motion for new trial
without hearing evidence because the motion Afail[ed] on its
own@; thus, neither
the movant nor the non-movant had the opportunity to develop and present
evidence on conscious indifference at an evidentiary hearing.  Id. at
390B91.  Here, an
evidentiary hearing was held, and, presumably, appellants had the opportunity
to present live testimony at the hearing.[4] 
Given these circumstances, we do not find that the court abused its discretion
simply by ruling on the first Craddock element based on the evidence
before it.  See In re Barber, 982 S.W.2d at 366; Advanced Aesthetics,
Inc. v. Creative Beauty Innovations, Inc., No. 2‑04‑078‑CV,
2005 WL 327176, at *1 (Tex. App.CFort Worth Feb.
10, 2005, pet. denied) (mem. op.) (affirming denial of motion for new trial for
failure to establish first Craddock element and distinguishing its facts
from Pollack on basis that trial court denied motion for new trial only
after conducting hearing in which court did not deny parties ability to further
develop facts, and parties opted to rely solely on competing affidavits, rather
than present live testimony); Novosad v. Cunningham, 38 S.W.3d 767, 771B72 (Tex. App.CHouston [14th
Dist.] 2001, no pet.) (holding that trial court did not abuse its discretion in
denying motion for new trial where it could have concluded that movant=s failure to
answer was intentional or due to conscious indifference based on evidence
heard, which consisted of affidavits filed by parties); Holberg, 731
S.W.2d at 587 (holding that trial court did not abuse its discretion in denying
motion for new trial where it could have concluded that movant=s failure to
answer was intentional or due to conscious indifference based on evidence
heard, which consisted of controverting affidavits).    








Turning to appellants= contentions
regarding the merits of the trial court=s finding, we
conclude that the trial court did not abuse its discretion in implicitly
finding that appellants failed to meet their burden to negate intentional or
conscious indifference.  As to Mr. Ataya=s failure to
appear, he admits having notice of the September 20 two-week trial setting
since at least August 16, 2005, over two weeks before he allegedly left for
California.  However, he never informed his attorney he went to California,
and, while there, he made no attempts to contact his attorney, the court, or
even his wife concerning any communication she may have received concerning the
litigation until the day before trial.  Moreover, the trial court=s refusal to
believe that Mrs. Ataya could not understand the repeated messages from their
attorney vitiates Mr. Ataya=s position that he never received any of
the messages from Bruce until the day before trial.  Accordingly, based on the
knowledge and acts of Mr. Ataya shown in the record, we cannot say the trial
court abused its discretion in implicitly finding that he failed to negate
intent or conscious indifference.  See Martinez v. Martinez, 157
S.W.3d 467, 470B71 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (finding conscious indifference for failure to answer
where out of state party, though having knowledge of divorce petition as early
as two months before formal service, never asked attorney to file an answer,
never asked to see copy of answer to be filed, never contacted the trial court
to see if answer had been filed, and never asked friends or family residing in
area where Texas trial court was located to check on progress of case); Pickell
v. Guar. Nat=l Life Ins. Co., 917 S.W.2d 439,
442 (Tex. App.CHouston [14th Dist.] 1996, no writ) (holding generally
that a party has duty to keep informed of when case is set for trial);
Sharpe v. Kilcoyne, 962 S.W.2d 697, 701 (Tex. App.CFort Worth 1998,
no pet.) (finding conscious indifference for failure to appear where party,
though having knowledge she was being sued and constructive notice of trial
date, and receiving multiple correspondences regarding pendency of suit, moved
out of country without leaving forwarding address, failed to contact her
attorney or court about case, and rejected correspondence regarding suit); see
also Matter of Brackeen, No. 07‑96‑0431‑CV, 1997 WL
760555, at *2B3 (Tex. App.CAmarillo Dec. 11,
1997, no pet.) (not designated for publication) (holding that party failed to
negate intent or conscious indifference for failure to appear where party,
though attorney did not inform her of precise trial date, had some notice that
case may go to trial following week and took no action to resolve any
uncertainty as to exact date).      

As to Mrs. Ataya=s failure to
appear, we similarly do not find the trial court abused its discretion in
implicitly finding she failed to negate intent or conscious indifference.  The
trial court found Mrs. Ataya=s only conceivable excuse for failing to
appear the day of trialCa lack of English proficiencyCto lack
credibility, and she has offered no other justification.[5] 
Moreover, even if Mrs. Ataya Acould neither read nor understand [her
attorney=s] messages very
well,@ this alone does
not explain why she waited until the day before trial to inform her husband of
the messages and failed otherwise to seek help from her attorney to understand
the messages.  See First Nat=l Bank of Bryan v.
Peterson, 709 S.W.2d 276, 279B80 (Tex. App.CHouston [14th
Dist.] 1986, writ ref=d n.r.e.) (finding conscious indifference
for failure to answer where three parties did not understand that writ of
garnishment required answer and failed to take steps toward consulting lawyer
after receiving writ); Butler v. Dal Tex Mach. & Tool Co., 627
S.W.2d 258, 260 (Tex. App.CFort Worth 1982, no writ) (finding
conscious indifference for failure to answer where party who allegedly did not
understand citation failed to take any action to seek help in understanding the
citation).  








Finally, appellants do not make any specific arguments
under the first Craddock element regarding Victory Wholesale=s failure to
appear.  Therefore, to the extent appellants= contentions
relating to the Atayas subsume Victory Wholesale, we similarly overrule them. 
To the extent appellants have failed to offer independent grounds for reversal
under the first Craddock element as to Victory Wholesale, they have
failed to present error to this court for review.  See Tex. R. App. P. 33.1.          

Because appellants failed to meet their burden under the
first Craddock element, we need not address their remaining arguments.  See
Novosad, 38 S.W.3d at 772.  

We therefore overrule appellants= sole issue and
affirm the trial court=s judgment.  

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed February 8, 2007.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore.









[1]  There is conflicting evidence in the record as to
whether the two-week period began September 20 or 26.  The exact date, however,
is irrelevant to our disposition of this appeal. 





[2]  The record does not reveal exactly when the court
set the trial for October 4.  Both parties allude to the evacuation of the
Houston metropolitan area during the week of September 20 due to Hurricane Rita
and agree the evacuation delayed the court in calling the case until October
4.  However, appellants did not contend in the trial court or to this court
that the hurricane or resulting evacuation in any way contributed to their
failure to appear for the October 4 trial setting.  





[3]  Mrs. Ataya stated in her affidavit that, due to her inability to fully
understand English, Mr. Ataya interpreted the affidavit for her. 





[4]  Appellants have not presented a record showing the trial court denied
their ability to present live testimony to this court.  See W & F
Transp., Inc. v. Wilhelm, 208 S.W.3d 32, 37 (Tex. App.CHouston [14th Dist.] 2006, no pet.)
(noting that historically, burden falls on appellant to see that sufficient
record is presented showing reversible error).  Moreover, appellants have failed
to explicitly contend that the trial court precluded live testimony at the
hearing.  See Tex. R. App. P. 38.1(h)
(AThe brief must contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record.@); Thomas v. Olympus/Nelson Prop. Mgmt., 148 S.W.3d 395, 401
(Tex. App.CHouston [14th Dist.] 2004, no pet.)
(noting that appellant bears burden to show that record supports contentions
raised, which includes specifying location of supporting evidence). 





[5]  We acknowledge that some cases have declined to find conscious indifference
where parties lacked English proficiency, did not seek aid in understanding
suit papers, and thus failed to answer or appear.  See, e.g., Lara v.
Rosales, 159 S.W.3d 121, 124 (Tex. App.CCorpus Christi 2004, pet. denied); Martinez v. Valencia,
824 S.W.2d 719, 723 (Tex. App.CEl Paso 1992, no writ).  However, in these cases, unlike the current
case, the lack of English proficiency was uncontroverted.